

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS

## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

Honorable L. A. Woods
State Superintendent of Public Instruction
Austin, Texas

Dear Sir:

Opinion Number O-4855-A
Re: Payment of transportation
of scholastics under Rural
Aid Bill (Acts 1941, Ch.549).

On September 24, 1942, this department rendered Opinion No. O-4855 which held, in effect, that after the entire scholastic enrollment of one school district is transferred to another school district under Article VIII, Section 1 of the current rural aid bill (Acts 1941, 47th Leg., R. S., Ch. 549, H. B. 284, p. 880), such scholastics are residents of the receiving district insofar as the payment of transportation aid, under Article V, Section 2 of the bill, is concerned; and, therefore, that transportation aid may not be granted for pupils who attend a grade in another school which grade is taught in the receiving district.

You have now supplied us with additional information and wish to know whether the ruling announced in Opinion No. O-4855-A would preclude the payment of transportation aid for a pupil transferred out of the sending district prior to the time that the contract transferring the entire scholastic enrollment was entered into.

We quote the following additional information from your letter of request:

"Additional data on this problem are as follows:

"The district originally had 27 enumerated resident scholastics in all grades. There were 2 transfers out; namely, Edward Wilson and his brother,

James Wilson, who were transferred out by parent
application prior to August 1, 1941, as provided
in Article 2696, Acts of the 44th Legislature,
Chapter 201, Section 1, page 288. Thus you will
note that these pupils were not a part of the
scholastic enumeration that was transferred by
contract on September 10, 1941, as provided by
Article 8, Section 1 of House Bill 284 for the
reason that the parents of these 2 children, act-
ing under authority of Article 2696, exercised
their right of choice by transferring to Salado
for the apparent reason that the 12th grade would
not be taught at Shanklin since that district
would be eligible for only one teacher.

"A reference to Article 5 of House Bill 284
will reveal that:

" 'The County Superintendent and County
School Boards of the several counties
of this State, subject to the approval
of the State Superintendent of Public
Instruction, are hereby authorized to
annually set up the most ECONOMICAL sys-
tem of transportation possible for the
purpose of transporting both grade and
high school pupils from their districts,
and within their districts.'

"Since the Committee had considered the ad-
visability of the routes over which this child
was transported and approved them, the question
of the most economical has been settled. I have
gone over these routes personally and find that
the route going to Salado came by the pupil's
house. On the other hand, had he been transported
to Belton, the Belton school bus would have had to
go 6 miles out of the way twice daily; so you will
see the law has been complied with in approving
such a transportation set-up.

"It is the opinion of this office that since
Edward Wilson was not on the census rolls of the

Shanklin District on September 10 when the contract was made, he was not included in the contract to transfer the remaining scholastics of the district to Belton. I agree with you that children not transferred as provided in Article 2696 and who are included in a contract are obligated to go to the receiving school or pay their own transportation, and that is what I feel you intended to hold. Also let me point out that Article 2696 will permit a pupil to be transferred only once each year."

In view of the above quoted matter you ask the opinion of this department on the following question:

"1. Since Edward Wilson's grade was not taught in the district in which he lived and in which his parents had legal residence, since the bus route over which he was transported to Salado was approved by the Department of Education and the Joint Legislative Advisory Committee, since he was not included in the contract to transfer the remaining scholastics to Belton for the reason that he was not on the Shanklin census roll at the time, since he was transported more than 2½ miles to the receiving school, and since the district showed an approved budgetary need for transportation, WOULD NOT THE SHANKLIN DISTRICT BE ELIGIBLE FOR TRANSPORTATION AID ON HIM TO TRANSPORT HIM TO SALADO AS ORIGINALLY APPROVED?"

We deem it unnecessary to quote at length the applicable provisions of the rural aid bill. Such provisions are quoted in Opinion No. O-4855. For the purposes of this opinion it will be sufficient to say that Section 2 of Article V prohibits the granting of transportation aid for pupils who attend a grade in another school which grade is taught in such pupil's home district, and that under Section 1 of Article VIII the trustees of a district unable to maintain a satisfactory school were authorized to enter into a contract transferring the entire scholastic enrollment to a convenient school of higher rank.

Honorable L. A. Woods, page #4

Article 2696, Vernon's Annotated Civil Statutes, provides as follows:

"Any child lawfully enrolled in any district or independent district, may by order of the county superintendent, be transferred to the enrollment of any other district or independent district in the same county upon a written application of the parent or guardian or person having lawful control of such child, filed with the county superintendent; provided that any district or independent district being dissatisfied with any transfer made by the county superintendent may appeal from such action to the county board of trustees of said county who shall have the right to annul and cancel the transfer allowed by the county superintendent.

"The applicant shall state in said application that it is his bona fide intention to send said child to the school to which the transfer is asked.

"Upon the certification of the transfer of any child, from one district to another district, by the county superintendent of the county in which the child resides at the time of the transfer, the State Department of Education shall authorize the State Treasurer to pay over directly the per capita apportionment, in independent districts of five hundred (500) or more scholastic population, to the district to which such child is transferred; and in all other districts, to county superintendents, to be paid by him to the respective districts to which such children are transferred; provided, no transfer shall be made after August 1st. Acts 1905, p. 263; Acts 1935, 44th Leg., p. 488, ch. 201, sec. 1."

You state that prior to August 1, 1941, Edward Wilson was transferred under Article 2696 from the Shanklin district. On September 10, 1941, the Shanklin district contracted under

Section 1 of Article VIII to transfer its entire scholastic enrollment to the Belton Independent School District. Was this pupil included within the scholastic enrollment of the Shanklin district at the time the contract was entered into? We agree with you that he was not, for pupils are transferred under Article 2696 "to the enrollment of any other district or independent district in the same county." In other words, after the transfer is made under Article 2696, the transferred pupil is no longer on the scholastic enrollment of his home district but is on the enrollment of the receiving district. Therefore, as Edward Wilson was transferred prior to August 1st, he was not included in the transfer contract entered into on September 10th. Since Edward Wilson's grade was not taught in his home district and since the other requirements of the Act are met, your question is answered in the affirmative.

We quote the following from your letter of request:

"In your opinion under discussion herein you point out that scholastics transferred by contract as authorized in Article 8, Section 1 of House Bill 284 become the residents of the receiving school, and, therefore, the pupils of Shanklin became residents of the Belton School District. That has raised this question. If they are for aid purposes residents of Belton and Belton is not eligible for aid under Article 1 of House Bill 284, then it follows that we would not be able to grant any sort of aid, either transportation, tuition, or salary aid, on the 25 pupils having legal residence in Shanklin who had changed their residence by the contract for the reason that Belton is ineligible for aid. Thus it seems that according to your Opinion No. O-4855 you are cancelling the right of the district to contract and still be eligible for the aid to which they were eligible prior to the contract. Now in your Opinion No. O-4678 you held that the aid was based upon the eligibility of the district before contract and that all such aid was based on the sending district's eligibility before contract. In this Opinion No. O-4855 it appears that you have changed your views in the matter and would, therefore, establish the basis for aid on

232

the eligibility of the receiving district. This
conflicts with Article 8 of House Bill 284 and
also with your Opinion No. O-4678."

You have placed a construction on Opinion No. O-4855
which we did not intend. Section 2 of Article V prohibits
the granting of transportation aid for a pupil who attends a
grade in another school which grade is taught in his home
district. We held in Opinion No. O-4855 that "after the en-
tire scholastic enrollment of such district (Shanklin) has
been transferred to the Belton Independent School District,
such scholastics are residents of the Belton district inso-
far as the payment of transportation aid is concerned." (Par-
enthetical insertion and emphasis added.) In other words,
transportation aid may not be granted for pupils covered by
such transfer contract who attend a grade in another school
which grade is taught in the Belton district. Of course,
the granting of aid is dependent upon the eligibility of the
Shanklin district, and aid granted to such district is to be
used in carrying out the transfer agreement. We think that
Opinions No. O-4678 and No. O-4855 are in no way inconsist-
ent, and we now reaffirm both such opinions.

We trust that this opinion satisfactorily answers
the questions in which you are interested.

APPROVED OCT 7, 1942

*[signature]*
FIRST ASSISTANT
ATTORNEY GENERAL

Very truly yours

ATTORNEY GENERAL OF TEXAS

By *[signature]*
George W. Sparks
Assistant

GWS-s


APPROVED
OPINION
COMMITTEE
BY *[signature]*
CHAIRMAN